IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CV-81099 (Cannon/Reinhart)

D.P. *et al.*,

    Plaintiffs

  vs.

SCHOOL BOARD OF PALM BEACH COUNTY *et al.*,

    Defendants.

_____

**PLAINTIFF FL NAACP'S SUPPLEMENTAL BRIEF REGARDING STANDING**

Plaintiff Florida State Conference of the National Association for the Advancement of Colored People ("FL NAACP") has standing to sue the School Board of Palm Beach County for injunctive relief to reduce illegal use of involuntary examination in its schools because its members who have children in Palm Beach County Public Schools face a substantial and imminent risk of being deprived of their rights to determine whether their children are involuntarily examined under the Baker Act. First Amended Complaint ("FAC"), ¶¶ 31-33, 284-310, ECF No. 31 (July 26, 2021). At the same time, children of these members face a substantial and imminent risk of being deprived of their rights to be free from excessive force and unreasonable seizure, as well as to be free from discrimination on the basis of disability or perceived disability. FAC ¶¶ 31-33, 251-275, 311-319, 366-372. Those children are at significant risk of unnecessary and traumatic involuntary examination and their parents are at risk of being denied their parental rights to prevent that from occurring. FL NAACP has an organizational interest in addressing the disproportionate use of involuntary examination on Black children in the School District of Palm Beach County ("SDPBC") as part of its larger organizational mission to reduce the disproportionate use of exclusionary discipline on Black children. FAC ¶ 32. Finally, FL NAACP's participation in this action does not require the participation of its

individual members in the lawsuit. These three elements are all that is required to establish that FL NAACP has standing.

## I. LEGAL STANDARD

"Where … a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" necessary to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). An organization's standing to assert its members' injuries was established in a case concerning the NAACP, FL NAACP's parent organization, "*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958), where the Court noted that for the purpose of determining the scope of [its] rights as a litigant, the association 'and its members are in every practical sense identical.'" *United Food and Commercial Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551, (1996).

An organization has standing to represent its members' rights "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). These three prongs "are the sole requirements." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999). "Neither unusual circumstances, inability of individual members to assert rights nor an explicit statement of representation are requisites." *Church of Scientology of Calif. v. Cazares*, 638 F.2d 1272, 1279 (5th Cir. 1981). Moreover, the third prong is a prudential requirement: "'the third prong of the associational standing test is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case and controversy within the meaning of the Constitution.'" *Doe*, 175 F.3d at 882-83 (quoting *United Food,* 517 U.S. at 557 (1996)).

## II. FL NAACP HAS SUFFICIENTLY ALLEGED STANDING

### A. Parent Members of the FL NAACP Have Standing to Sue the Board for Injunctive Relief

FL NAACP has alleged that it has members in public schools with standing to seek injunctive relief to challenge the School Board's policies and practices regarding use of the Baker Act in SDPBC schools. FAC ¶ 33. Without fundamental change in SDPBC's use of involuntary psychiatric examination, FL NAACP members face a substantial risk of being deprived of their rights to make medical decisions for their children and of their care custody and control of their children. Children of these members face a substantial and imminent risk of being deprived of their rights to be free from excessive force and unreasonable seizure, as well as to be free from discrimination on the basis of disability or perceived disability. FL NAACP is not seeking to bring claims against the individual defendants and hence does not assert that it has standing to sue Officer Margolis or any other individual defendant. *See* Pls.' Opp'n to Mot. to Dismiss, ECF No. 50, at 10 n. 8 (Sept. 13, 2021).

Every member of the FL NAACP with children in SDPBC public schools may, on any school day, have their children taken away from school in handcuffs to a locked psychiatric facility without their consent. SDPBC initiates these involuntary examinations without regard for reasonable accommodations that might prevent this involuntary examination or any effort to prevent discrimination against these children on the basis of their disability. Plaintiff L.H., mother of W.B., is also a member of the FL NAACP, which FL NAACP could establish through affidavit or amendment if given leave to do so. Hence, FL NAACP has at least one member who has standing, which is all that is required for organizational standing. *Warth*, 422 U.S. at 511 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-41 (1972)).

This risk of deprivation of the rights of FL NAACP members with children in SDPBC is both imminent and substantially likely to occur. "Imminence as a doctrinal standard is somewhat elastic and applying it is not an exercise in conceptual analysis but an attempt to advance the

purposes behind the case-or-controversy requirement of Article III, including the guaranty of actual adversity between the parties, the limitation on the power of federal courts, and the reservation of judicial resources to resolve more concrete and pressing disputes." *Florida State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (citations and internal quotation marks omitted).

Here, an average of more than two children per school day are subjected to involuntary psychiatric examination in Palm Beach County Schools.[1] Plaintiffs allege that SDPBC's policy is to deny the parents of those children the exercise of their constitutional rights to consent or not consent to the examination—something Defendants have not disputed. FAC ¶¶ 208, 211, 215, 296, 307; Defs.' Mot. to Dismiss, ECF No. 45, at 23-24 (arguing that the District need only notify parents rather than seek their consent). Because any child could be involuntarily examined on any school day, each parent member of the FL NAACP with children in SDPBC faces an imminent danger of being unconstitutionally denied their parental rights and of their children being denied their constitutional and statutory rights to be free from excessive force, illegal seizure and discrimination on the basis of disability. *Pub. Citizen v. F.T.C.*, 869 F.2d 1541, 1550–51 (D.C. Cir. 1989) (holding that an organization has standing where its members had "standing to sue in their role as parents" of "adolescent or even pre-adolescent children" because "the parents of at-risk children are the ones that we might otherwise *expect* to bring suit.").

In addition to being imminent "the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1233 (11th

---

[1] SDPBC was on track to involuntarily examine more than 400 children in the most recent school year for which there is data. FAC ¶ 197. The District has less than 200 days of instruction per school year. School Board of Palm Beach County, "Student Attendance Calendar," online at https://www.palmbeachschools.org/school_district_of_palm_beach_county_calendars.

Cir. 2019). One important qualitative factor in determining whether an injury is likely to occur is whether "the threatened acts that will cause injury are authorized or part of a policy." *31 Foster Child. v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003). In *Lyons¸* the Supreme Court's leading case on standing to enjoin future injuries, the Court held that while the plaintiff had not shown he had a sufficiently non-hypothetical risk of being placed in a chokehold by police again, he could have established standing by alleging that "he would have another encounter with the police" and that "the City ordered or authorized police officers to [use chokeholds]." *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). Here, Plaintiffs have alleged that parents are denied their parental rights whenever a child is involuntarily examined as a matter of SDPBC policy. FAC ¶¶ 208, 211, 215, 296, 307. Plaintiffs have further alleged that the SDPBC has a blanket policy of handcuffing all children subjected to involuntary examination, without any attempt to determine if a child should receive reasonable accommodations due to their disability or if there is any justification for handcuffing an individual child. FAC ¶ 194. Plaintiffs have further alleged that the District's failure to train staff on the correct legal requirements for an involuntary examination and its policy of not requiring consultation with mental health providers results in children being subjected to involuntary examination when they do not meet the statutory criteria for this traumatic intervention. FAC ¶¶ 204-220.

Another important factor in assessing likelihood of injury is whether the plaintiff can "avoid future exposure to the challenged course of conduct." *Church v. City of Huntsville*, 30 F.3d 1332, 1338 (11th Cir. 1994) (citations and internal quotation marks omitted) (people experiencing homelessness could not avoid regular police interaction). Here parent members of the FL NAACP would need to withdraw their children from SDPBC schools to entirely avoid SDPBC's alleged use of illegal involuntary examinations in response to ordinary childhood actions, expressions of sadness, and manifestations of disabilities. FAC ¶¶ 193-97, 221-248. And

their children, likewise, cannot reasonably be expected to entirely avoid any of these behaviors which the District responds to with illegal involuntary examinations under the Baker Act.

The Eleventh Circuit has applied these principles to involuntary psychiatric examination. In *Lynch v. Baxley*, 744 F.2d 1452, 1456-57 (11th Cir. 1984), it held that a man with mental illness had standing to challenge, on behalf of a class, a state policy of housing involuntarily examined people in county jails when other facilities were not available. The Court explained that the named plaintiff was "at risk of being detained in jail not because of volitional acts on his part but because his mental condition would prompt his family, as it has done on two previous occasions, to petition for involuntary commitment." *Id.* at 1457 n. 7.

Members of the FL NAACP are also at greater risk than the average parent because, while not all members are Black, many are and the FAC alleges that Black children, particularly very young Black children, are involuntarily examined at disproportionate rates in Palm Beach County schools: 40 percent of involuntarily examined children between 2016 and 2020, including 68 percent of five-, six-, and seven-year-olds, were Black, while the overall student population is just 28 percent Black. FAC ¶¶ 33, 200-201.

### B. The FL NAACP Has an Organizational Interest in Preventing Unnecessary Involuntary Examination of Black Children

The "FL NAACP is committed to eliminating discrimination on the basis of race in healthcare and public education." FAC ¶ 31 It "has a longstanding commitment to ending the disproportionate use of exclusionary discipline, which includes arrest, suspension, expulsion, and other forms of school discipline, on Black children in Florida and spends a significant portion of its organizational resources on this priority." FAC ¶ 32. Ensuring that Black children can attend school safely, in turn, is part of the NAACP's longstanding organizational mission of eliminating race-based discrimination in healthcare and education. FAC ¶¶ 31-33. Ending the illegal use of involuntary examination under the Baker Act by SDPBC, which disproportionately harms Black

children, FAC ¶¶ 33, 200-201, is hence "germane to the organization's purpose." *Friends of the Earth,* 528 U.S. at 181.

### C. Participation of Individual NAACP Members Is Not Necessary

The third *Hunt* factor, that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," 432 U.S. at 343, "is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food,* 517 U.S. at 557. This factor "'depends in substantial measure on the nature of the relief sought.'" *Hunt*, 432 U.S. at 343 (quoting *Warth*, 422 U.S. at 515). It is relevant when, for example, an organization seeks damages that must be paid directly to individual members of the organization. *See Warth*, 422 U.S. at 500, 515-16 (noting that generally organizations may not bring damages cases on behalf of their members, but that Congress can create a right to do so). Where, in contrast "'the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.'" *Hunt*, 432 U.S. at 343 (quoting *Warth*, 422 U.S. at 515). That is the case here—FL NAACP seeks an injunction to require the School Board to respect parents' rights and that injunction will benefit all members with children in SDPBC schools.

### III. CONCLUSION

For the foregoing reasons, FL NAACP has standing to seek injunctive relief and the Court has jurisdiction to hear its claims. In the alternative, FL NAACP seeks leave to amend to allege more specific facts relevant to its standing and/or file an affidavit containing such facts.

Dated: November 22, 2021

Respectfully submitted,

*/s/ Sam Boyd*

BACARDI JACKSON (Florida Bar No. 47728)
EVIAN WHITE DELEON (Florida Bar No. 84790)
SAM BOYD (Florida Bar No. 1012141)
Southern Poverty Law Center
P.O. Box 12463
Miami, FL 33101
Tel: 786-347-2056
Fax: 786-237-2949
bacardi.jackson@splcenter.org
evian.whitedeleon@splcenter.org
sam.boyd@splcenter.org

ANN MARIE CINTRON-SIEGEL (Florida Bar No. 166431)
MOLLY J. PARIS (Florida Bar No. 90486)
Disability Rights Florida, Inc.
1930 Harrison St. Ste. 104
Hollywood, FL 33020
Tel: 800-342-0823
Fax: 850-617-6647
anns@disabilityrightsflorida.org
mollyp@disabilityrightsflorida.org

SHAHAR PASCH (Florida Bar No. 580971)
Pasch Law Group
1806 Old Okeechobee Road, Suite B
West Palm Beach, FL 33409
Tel: 561-599-7400
Fax: 561-258-8243
shahar@paschlaw.com

MELISSA DUNCAN (Florida Bar No. 796921)
Legal Aid Society of Palm Beach County, Inc.
423 Fern St., Ste. 200
West Palm Beach, FL 33401-5839
Tel: 561-655-8944
Fax: 561-655-5269
mduncan@legalaidpbc.org

HANNAH BENTON EIDSATH (admitted pro hac vice)
National Center for Youth Law

712 H Street NE, DPT #32020
Washington, D.C. 20002
Tel: 510-899-6559
Fax: 510-380-7603
hbenton@youthlaw.org

JEAN STROUT (admitted pro hac vice)
RACHEL VELCOFF HULTS (admitted pro hac vice)
National Center for Youth Law
1212 Broadway, Ste. 600
Oakland, CA 94612
Tel: 510-835-8098
Fax: 510-835-8099
jstrout@youthlaw.org
rvelcoff@youthlaw.org

JOSHUA C. TOLL (admitted pro hac vice)
King & Spalding LLP
1700 Pennsylvania Ave. NW, Ste. 200
Washington, D.C. 20006
Tel: 202-737-8616
Fax: 202-626-3737
jtoll@kslaw.com