UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

D.P. et al.,                                                           CASE NO.: 21-81099-CIV-CANNON

      Plaintiffs,
v.

SCHOOL BOARD OF PALM BEACH
COUNTY, et al.,

      Defendants.
_____/

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF KRISTIN KOSMERL, Ed.D.

Defendant, SCHOOL BOARD OF PALM BEACH COUNTY, by and through its undersigned attorneys, hereby moves this Honorable Court for entry of an Order excluding the testimony and reports of Plaintiffs' expert, Kristin Kosmerl, Ed.D., and states as grounds thereto:

## LEGAL STANDARD

Federal Rule of Evidence 70 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principals and methods; and
    (d) the expert has reliably applied the principals and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993), the Supreme Court established that federal courts function as gatekeepers for expert testimony and determine which expert testimony should be presented to the jury. Courts' gate-keeping obligations apply to all types of expert testimony, not just scientific testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Importantly, it is the proponent of the expert testimony who bears the

burden to prove by a preponderance of the evidence that (1) the testimony is relevant to an issue in the case; (2) the testimony is reliable; and (3) the proffered expert is qualified.  *Daubert*, 509 U.S. 590-91.

Thus in this case, plaintiff must present sufficient evidence for the court to find that the proposed expert's "knowledge, skill, experience, training, or education" qualify to testify regarding the subject matter of their testimony.  *Macy v. Whirlpool Corp.*, 613 F. App'x 340, 344 (5th Cir. 2015) (affirming exclusion of a proposed expert, an accomplished engineer, because he had no significant experience or training regarding the subject matter for which he was to testify). Furthermore, the plaintiff must show that the proposed expert's "qualifying training or experience, and a resultant specialized knowledge, are *sufficiently related* to the issues and evidence . . . [such] that the witness's proposed testimony will help the trier of fact." (citing *United States v. Wen Chyu Liu*, 716 F.3dd 159, 167 (5th Cir. 2013) (emphasis in original.))

A motion to exclude an expert's proposed testimony is effectively a motion *in limine*. "The purpose of a motion *in limine* is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury. In resolving evidentiary disputes before trial, motions *in limine* avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury." *In the Matter of Blue Crest HoldingAsset, Inc.*, No. 17-21011-CIV, 2018 WL 1463644, at *1 (S.D. Fla. Jan. 24, 2018) (internal quotation marks and citations omitted). A court should grant a motion *in limine* to exclude when evidence is clearly inadmissible. *Veiga OC Elec. LLC*, No. 18-24359-CIV, 2020 WL 13413701, at *1 (S.D. Fla. Oct. 9, 2020) (*quoting Fagundez v. Louisville Ladder, Inc.*, No. 10-23131-CIV, 2012 WL 253214, at *1 (S.D. Fla. Jan. 26, 2012)). And, as to evidence expected to be proffered through expert witnesses in particular, "[d]istrict courts have broad discretion in deciding to admit or

exclude expert testimony." *Fagundez,* 2012 WL 253214 at *1. "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 4990902, at *1 (S.D. Fla. Aug. 20, 2021).

**I.     Background**

The Plaintiffs retained Kristin Kosmerl, Ed.D., to render opinions on the following subjects:

1. *The actions or inactions of school district personnel, including Officer Brown, on February 16, 2021, in response to W.B.'s dysregulated behaviors;*

2. *Whether the accommodations listed W.B.'s educational records were provided as written, as well as what other accommodations should have been provided on February 16, 2021, to prevent W.B.'s involuntary examination;*

3. *Whether the handcuffing of an elementary student with a disability and the involuntary transport from school due to behavior related to the student's disability is trauma inducing or invoking.*

Kosmerl Report at page 3, attached hereto as EXHIBIT A.  Defendant brings this motion to exclude Dr Kosmerl's testimony because Plaintiff cannot satisfy any of the requirements mandated by *Daubert* for admission of Dr. Kosmerl's opinions.

**II.     Dr. Kristin Kosmerl lacks requisite certification, training, and/or experience to qualify as an expert**

Dr. Kosmerl was first asked to opine on the actions or inactions of school district personnel, including Officer Brown in response to Plaintiff W.B.'s "dysregulated behaviors", which she defines as "negative behaviors exhibited in response to non-preferred stimuli." Although Dr. Kosmerl's experience generally includes providing Applied Behavior Analysis

3

(ABA) Therapy to students, she did not provide *any* therapy to W.B. Remarkably, Dr. Kosmerl did provide therapy to another one of the Plaintiff's in this case, she ceased after 2 sessions because "[h]e needed a higher level of care" than Dr. Kosmerl was able to provide. (Deposition at 14:20-15:17), attached hereto as EXHIBIT B.

```
Page 14
20      Q    Okay.  Are you aware that one of the other
21   plaintiffs was referred specifically to you for ABA
22   therapy?
23      A    Yes.
24      Q    And which plaintiff is that?
25      A    That's the one I can't remember the initials.

Page 15
 1      Q    Did you provide ABA therapy to that
 2   individual?
 3      A    I went to the house maybe twice.  That was at
 4   least four years ago.
 5      Q    Why only twice?
 6      A    It was -- the insurance wasn't covering it
 7   and --
 8           MS. MONFREDO:  Objection.
 9           MS. PINCUS:  Are you objecting to her answer?
10           MS. MONFREDO:  No, sorry, to your question.
11           MS. PINCUS:  Okay.
12   BY MS. PINCUS:
13      Q    So insurance wasn't covering it and that's why
14   you stopped seeing --
15           MS. MONFREDO:  Objection.
16           THE WITNESS:  He needed a higher level of care
17       than what I could provide by myself.
```

Furthermore, Dr. Kosmerl did not meet or observe W.B. and she did not speak with his parents. Her only familiarity with W.B. was from his records.

Dr. Kosmerl's report clearly delves into areas in which she lacks expertise. She includes her unsolicited opinions on what school district policies "should" do. There no basis to support that she has any specialized knowledge, skill, experience, training or education regarding school policies or any of the suggestions she made. Rather, she took them from actual experts in the field. In essence, Dr. Kosmerl's report is a compilation of other expert's work that she reviewed only in preparation for her report. This is impermissible. Although an expert may rely on hearsay when

formulating his or her opinions, an expert "may not blindly rely on the conclusion of another expert and still meet the reliability requirements of Rule 702 and Daubert." *Grayson v. No Labels, Inc.*, 559 F.Supp.3d 1184, 1193 (M.D. Fla. Apr. 25, 2022). Dr. Kosmerl engaged in "inappropriate parroting," which "occurs when an expert adopts another expert's opinion wholesale, without reaching independent conclusions in reliance on that opinion." *McHale v. Crown Equip. Corp.*, 2022 WL 4350702 at *3 (N.D. Ga. Feb. 4, 2019). Therefore, her opinions must be excluded.

   A.   **Dr. Kosmerl Should be Precluded from Offering Opinions Regarding Florida's Mental Health Act and Implementation as it Relates to W.B.**

Under the Baker Act, a law enforcement officer "shall take a person who appears to meet the criteria for an involuntary examination into custody" and deliver or have them delivered to a receiving facility "for examination." § 394.463(2)(a)(2), Fla. Stat. The pertinent criteria are that "there is reason to believe that the person has a mental illness and because of his or her mental illness"; the person has refused a voluntary examination or is unable to make that decision for himself; and "[t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior." § 394.463(2)(a)(2), Fla. Stat. When drafting her Rebuttal Report, attached hereto as EXHIBIT D, Dr. Kosmerl reviewed the 2021 Mental Health statute and inaccurately summarized it. Remarkably, she omitted a reference to situations where there is a "substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or others in the near future.

(Deposition at 97-99) attached hereto as EXHIBIT B.

```
Page 97
 1      A    Again, I would like to have the 2021 in front
 2   of me.
 3      Q    I'm going to ask you based on 2022.
 4      A    Okay.
```

5

```
 5      Q    Because you did review 2022, correct?
 6      A    For the rebuttal, yes.
 7      Q    Okay.  So in your rebuttal, when you reference
 8 2022, what is the criteria for a student -- or an
 9 individual to be Baker Acted?
10      A    If the person has refused voluntary
11 examination or unable to determine for himself or -- him
12 or herself and without care or treatment the person is
13 likely to suffer from neglect or refuse care; poses a
14 real and present threat of substantial harm; that such
15 harm may be avoided -- or it's not apparent that such
16 harm may be avoided through the help of willing family
17 members or friends or the provisions of other services;
18 substantial likelihood that without care or treatment
19 the person will cause serious bodily harm to himself or
20 others in the near future.
21      Q    Are you leaving out as evidenced by recent
22 behavior on accident or just --
23      A    I'm sorry, as evidenced by recent behavior.
24      Q    And before the number 2, do you see the word
25 or?
```

Page 98
```
 1      A    Yes.
 2      Q    So you omitted that too.  Just accidental or
 3 was that intentional?
 4      A    I didn't -- I was summarizing.
 5      Q    Okay.  So in looking at number 2, would you
 6 agree that the criteria to Baker Act an individual
 7 today, 2022, to now, 2023, there is a substantial
 8 likelihood that without care or treatment that the
 9 person will cause bodily harm -- serious bodily harm to
10 himself or herself or others in the near future as
11 evidenced by recent behavior, correct?
12      A    That's what this says, yes.
13      Q    I know that's what this says.  Did you review
14 it at the time when you were reaching the conclusions in
15 your report?
16      A    I reviewed the 2021.
17      Q    If the incident that -- or the day that WB had
18 thrown desks at others, running away from school, trying
19 to hop a fence, looking up ways to kill people on the
20 internet -- and I know that this happened in 2021 and
21 now it's 2022 -- would he meet the criteria in your
22 opinion for a Baker Act?
23      A    I do not believe so.
24      Q    Substantial likelihood that he will cause
25 serious bodily harm to himself or others in the near
```

Page 99
```
 1 future as evidenced by recent behavior, you don't think
 2 that he met the criteria?
 3      A    No, nor was mom asked if she would voluntarily
 4 take him or what she -- her thoughts on it.
 5 Additionally, Ms. Sumner did not think he was a danger
 6 to himself or others, or Mr. Curtis Brown.
```

```
 7        Q    Did you review mom's deposition?
 8        A    No.
 9        Q    Why not?
10        A    I'm not sure.  It was not provided and I don't
11   know when it was given.
12        Q    You said you reviewed School Board Policy
13   5.20?
14        A    Correct.
15        Q    What years did you review?
16        A    I'm not sure.  I could tell you if I looked at
17   it.
18        Q    Is it listed in your report which one you
19   reviewed?
20        A    I don't -- I can tell you.  I'm looking at it.
21        Q    But you wouldn't be able to tell from your
22   report which one you looked at?
23        A    I wrote two reports.
24        Q    Was the school board policy provided to you by
25   counsel or did you look it up yourself?
```

Dr. Kosmerl's experience relates to behavior, but it is apparent she lacks the requisite expertise in the Baker Act itself, lacks an understanding of the applicable School Board policy, and has not expertise in the area of suicide or homicide. More importantly, her review of the facts in Plaintiff W.B.'s case are cherry-picked and ignores the most significant and important facts of this case. Dr. Kosmerl completely <u>ignored</u> the fact W.B. was reported by his mother to have been looking up ways to kill people on the internet. This fact is contained in Officer Brown's police report, attached hereto as EXHIBIT C. Dr. Kosmerl never conducted a clinical interview or even had a telephonic conversation with W.B.'s mother, nor did she review the mother's deposition when preparing her report. Without taking this very important fact into account, the rest of Dr. Kosmerl's opinions lack any semblance of foundation. Whether or not Officer Brown was trained in PCM de-escalation has absolutely no bearing on whether this student was looking up ways to kill people on the internet. When asked about this important fact during her deposition, Dr. Kosmerl conceded she omitted it from the report and qualified it as "verbal aggression is not in behavior. Verbal aggression is just that, verbal aggression. There is no imminent danger… he is not acting on it at the moment." Importantly, this conclusion is based upon the same lack of

understanding of 2021 Mental Health Statute exposed in Dr. Kosmerl's Rebuttal Report, attached hereto as EXHIBIT D.  When faced with a very important fact of this case, Dr. Kosmerl just omitted any reference demonstrating, her lack of expertise.

**B.      Dr. Kosmerl should Be Precluded from Offering Opinions regarding Professional Crisis Management**

In her report, Dr. Kosmerl includes a four-page overview of Professional Crisis Management ("PCM") and incorrectly concludes that it is the only crisis management system utilized by the School District.  Notably, Dr. Kosmerl did not recommend the District utilize the PCM system because she was knowledgeable about it or had experience with it.  Rather, she chose to educate herself on this program in preparation for writing her report because she identified it as a system already being used by the District and because she found a colleague who provided her with an outdated copy of the manual.   Dr. Kosmerl was aware that VITAL was also used by the District as another crisis management system and that Officer Brown was trained in VITAL.  However, she discounted the training provided in this program because she was unable to research it and therefore determined there was a lack of data.

(Deposition at 47:7-48-14) attached hereto as EXHIBIT B.

Page 47
```
7 Q You're familiar with VITAL?
8 A I'm --
9 Q Capital V, capital I, capital T, capital A,
10 capital L.
11 A Other than it's listed in the SP&P, I am not.
12 Q Are you familiar with any differences between
13 VITAL and PCM?
14 A I -- I could not find much information on
15 VITAL.
16 Q You didn't have a friend that's been trained
17 in VITAL?
18 A No.
19 Q Do you have any friends who are police
20 officers?
21 A For the School District?
22 Q Correct.
23 A No.
```

```
24 Q Do you have any friends who are police
25 officers outside the School District?
```
Page 48
```
1 A Yes.
2 Q Have they been trained in crisis management?
3 A I'm not sure.
4 Q Would you believe that they have been trained
5 in crisis management and/or de-escalation?
6 A Honestly, no.
7 Q But you don't know, do you?
8 A I've had conversations with some, not in this
9 state, but ...
10 Q So you don't really know the level of training
11 in de-escalation that police officers have, do you?
12 A I know what is in the SP&P. What I tried to
13 research, there's not much data on VITAL and as well as
14 what Officer Brown described in his deposition.
```

Dr. Kosmerl's opinion that school police should be trained in the same de-escalation strategies as ESE staff lacks any foundation as she has absolutely no knowledge about the VITAL program or whether it aligns with the same de-escalation strategies as PCM. Although she seems to conclude that the programs are not aligned, she lacks any expertise in the topic and therefore is unqualified to opine on this issue.

To further compound this issue, Dr. Kosmerl also has no experience or certification in PCM and her alleged training is very limited. The only certification she has held was in a different system called Safety Care, which requires annual re-certification, yet she has not been re-certified since 2001. When writing her report, Dr. Kosmerl obtained a 2008 version of a PCM practitioner's manual from a friend, read it 5 times and then quoted from it. This is woefully short of demonstrating any training or expertise in implementing PCM.

(Deposition at 45:11-46:22) attached hereto as EXHIBIT B.

Page 45
```
11      Q    Were you ever trained/certified in
12   professional crisis management, PCM?
13      A    I was trained, not certified.
14      Q    And when were you trained?
15      A    I sat through the initial de-escalation when I
16   was at Connections.
17      Q    Is that when you were given materials?
```

```
18        A     No.
19        Q     When were you given materials for PCM that you
20   reviewed in preparation for your report?
21        A     Sometime in November.
22        Q     And who gave them to you?
23        A     A colleague.
24        Q     You're aware that those are copyrighted
25   materials?

Page 46
 1        A     Yes.  That's why I didn't copy them.
 2        Q     Are you aware that -- in your opinion, did you
 3   have the right to be reviewing them?
 4              MS. MONFREDO:  Objection.
 5              THE WITNESS:  Yes.  It's a book.
 6   BY MS. PINCUS:
 7        Q     Did you pay for it?
 8        A     I borrowed it from a friend.
 9        Q     Did your friend pay for that training or did
10   somebody pay for that training on behalf of your friend?
11        A     Honestly, I don't believe my friend was
12   trained.
13        Q     So where did your friend get the book?
14        A     I'm not sure.
15        Q     The book that you reviewed was from 2008; am I
16   correct?
17        A     Correct.
18        Q     Do you know if there's an updated one?
19        A     I believe one just came out.
20        Q     Do you know what the changes are between the
21   one that you reviewed and the one that just came out?
22        A     I have not read the new book.
```

Dr. Kosmerl simply does not have the necessary training or experience to allow her to opine on PCM or the District's implementation of same. Therefore, her opinions must be excluded.

**B.     Dr. Kosmerl Should Be Precluded from Offering Opinions regarding Trauma**

Dr. Kosmerl took an unspecified "series of courses and tests" to become a "Certified Trauma and Resilience Practitioner." According to her deposition testimony, this certification is provided to people "trained in what trauma looks like and how to respond." Based upon this background, Dr. Kosmerl concludes that "all school personnel should be trained in the signs of childhood trauma and behavioral strategies for addressing and preventing trauma." Dr. Kosmerl did not evaluate or diagnose W.B. to determine if his behaviors were in fact due to trauma. In her

report she concedes that diagnosing students is outside the scope of her expertise and she never met or observed W.B. Kosmerl Report at page 5, attached hereto as EXHIBIT A.

This is clearly inadequate to establish that Dr. Kosmerl is qualified to state whether W.B. or any of the students at issue in this law suit were evincing trauma-related behaviors. Such an opinion is not sufficiently reliable under Daubert. *See, e.g., Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1198-1204 (11th Cir. 2010) (trial court did not abuse discretion in excluding expert opinions that traumatic brain injury caused child's autism where experts did not engage in valid methodology in their analysis and instead relied on various treatises to reach conclusions). Accordingly, Dr. Kosmerl's opinions regarding any trauma suffered by W.B. or any other student should be excluded.

WHEREFORE, the Defendants respectfully request that the Court grant this motion and issue an Order excluding the reports of Plaintiff's Expert, Dr. Kristin Kosmerl, and preclude her from testifying as an expert on those issues identified in her reports for which she is not qualified.

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(3)**

Pursuant to Local Rule 7.1(a)(3), counsel for the Defendants have conferred with counsel for Plaintiffs by telephone on May 15, 2023, and counsel opposes the filing of this motion. Respectfully submitted May 17, 2023.

J. Erik Bell, Esq.
Florida Bar No.: 328900
THE SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA
Shawntoyia Bernard, Esq.
General Counsel
3320 Forest Hill Blvd, C-331
West Palm Beach, FL  33416-9239
Tel: (561)434-8750
Fax: (561)434-8105

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 17, 2023, the foregoing document served via email on all counsel or parties of record on the Service List below.

                                          The School Board of Palm Beach County, Florida
                                          Shawn Bernard, Esquire, General Counsel

                                          By:  /s/ *J. Erik Bell*
                                                   Jon Erik Bell, Esq.
                                                   Florida Bar No. 328900
                                                   Laura Esterman Pincus, Esq.
                                                   Florida Bar No. 90018
                                                   Anna Patricia Morales, Esq.
                                                   Florida Bar No. 27634
                                                   Lisa Anne Carmona, Esq.
                                                   Florida Bar No. 843490
                                                   Office of General Counsel
                                                   3318 Forest Hill Boulevard, Suite C-331
                                                   West Palm Beach, Florida 33406
                                                   Tel: (561) 434-8500
                                                   Fax: (561) 434-8105
                                                   jon.bell@palmbeachschools.org
                                                   merrie.mckenziesewell@palmbeachschools.org

**SERVICE LIST:**
Ann Marie Cintron-Siegel
Disability Rights Florida
2400 East Commercial Blvd
Suite 525
Fort Lauderdale, FL 33308
850-617-9790
850-488-9071 x 9790
Fax: 850-617-6647
Email: anns@disabilityrightsflorida.org

Evian Lynn White
Southern Poverty Law Center
PO Box 12463
Miami, FL 33101
786-447-7755
Fax: 786-237-2949
Email: evian.whitedeleon@splcenter.org

Melissa Marie Duncan
Legal Aid Society of Palm Beach County
423 Fern Street
Suite 200
West Palm Beach, FL 33401
561-655-8944
Fax: 655-5269
Email: mduncan@legalaidpbc.org

Molly Jean Paris
Disability Rights Florida
1930 Harrison Street
Suite 104
Hollywood, FL 33020
305-788-9359
Email: mollyp@disabilityrightsflorida.org

Samuel Turner Silk Boyd
Southern Poverty Law Center
PO Box 12463
Miami, FL 33101
7865700737
Email: sam.boyd@splcenter.org

Shahar Vinayi Pasch
1806 Old Okeechobee Road
Suite B
West Palm Beach, FL 33409
561-599-7400
Email: shahar@paschlaw.com

Hannah Benton Eidsath
National Center for Youth Law
712 H Street NE, DPT #32020
Washington, DC 20002
202-868-4781
Email: hbenton@youthlaw.org

Jean Strout
National Center for Youth Law
1212 Broadway, Ste. 600
Oakland, CA 94612
510-835-8098
Email: jstrout@youthlaw.org

Joshua C. Toll
King & Spalding LLP
1700 Pennsylvania Ave. NW, Ste. 200
Washington, DC 20006
Email: jtoll@kslaw.com

Rachel Velcoff Hults
National Center for Youth Law
1212 Broadway, Ste. 600
Oakland, CA 94612
Email: rvelcoff@youthlaw.org

Bacardi L Jackson
Southern Poverty Law Center
PO Box 12463
Miami, FL 33101
786-570-8047
Fax: 786-237-2949
Email: bacardi.jackson@splcenter.org

Eric L. Stettin
WEISS SEROTA HELFMAN
 COLE & BIERMAN, P.L.
200 East Broward Blvd., Suite 1900
Fort Lauderdale, FL  33301
(954) 763-4242
Email: estettin@wsh-law.com

Charles M. Garabedian
WEISS SEROTA HELFMAN
 COLE & BIERMAN, P.L.
200 East Broward Blvd., Suite 1900
Fort Lauderdale, FL  33301
(954) 763-4242
Email: cgarabedian@wsh-law.com

Kaitlyn N. Kelley
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
200 E. Broward Blvd., Suite 1900
Ft. Lauderdale, FL 33301
Tel: 954-763-4242
Email: kkelley@wsh-law.com