IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| D.P. *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> SCHOOL BOARD OF PALM BEACH COUNTY, <br><br> Defendant. | CASE NO. 21-CIV-81099-CANNON |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF KRISTIN KOSMERL, Ed.D**

I.      INTRODUCTION

Plaintiffs retained Dr. Kristin M. Kosmerl to provide an opinion related to minor Plaintiff W.B. Specifically, Dr. Kosmerl was asked to opine on the actions or inactions of School District personnel in response to W.B.'s dysregulated behaviors, whether the accommodations listed in W.B.'s educational records were provided as written, what other accommodations should have been provided on the date of his involuntary examination, and whether handcuffing an elementary school student with a disability and transporting him involuntarily from school due to behavior related to his disability would invoke or induce trauma. [ECF No. 172-1 at 2, Kosmerl Report ("Kosmerl Rpt.")].[1]

Dr. Kosmerl's opinions on these topics, in turn, were shaped and informed by her substantial qualifications as a Board-Certified Behavior Analyst-Doctorate (BCBA-D), International Behavior Analyst (IBA), Certified Autism Specialist (CAS), Certified Trauma & Resilience Practitioner (CTRP), Attention Deficit Hyperactivity Disorder-Certified Educator (ADHD-CE), Pennsylvania Licensed Behavior Specialist (LBS), and Texas Licensed Behavior Analyst (LBA). [Kosmerl Rpt. at 2, 37–49].[2] She further holds a Bachelor of Science in Education in Elementary Education, Master in Elementary Education, Post-Master Certificate in Applied Behavior Analysis, and Doctorate in Education Administration, and has over 12 years of public education experience and 21 years of experience in applied behavior analysis and the assessment and treatment of severe behavioral disorders. [Kosmerl Rpt. at 2, 37–49]. Most notably, she served for more than two years as Supervisor of Special Education for an entire school district. [Kosmerl Rpt. at 42–43].

---

[1] All pin cites to Kosmerl Report, [ECF No. 172-1], refer to the original pagination of the report.
[2] Florida does not currently license behavior analysts. [Kosmerl Rpt. at 2].

1

Despite Dr. Kosmerl's formidable qualifications in education and behavior, Defendant contends that she is not qualified to offer her opinions. Its motion rests on a misunderstanding of Dr. Kosmerl's expertise and a misstatement of the topics on which she opined. Specifically, Defendant makes four intertwined arguments that Dr. Kosmerl lacks the requisite certification, training, and/or experience to qualify as an expert to opine on (1) W.B.'s case history and behaviors, (2) Florida's Mental Health Act and implementation as it relates to W.B., (3) Professional Crisis Management, and (4) trauma.

In fact, Dr. Kosmerl is sufficiently qualified to offer the opinions in her report. Contrary to Defendant's apparent belief, she did not offer an opinion on the Baker Act or whether W.B. met the criteria for involuntary examination. Rather, she opined on what accommodations should have been provided to W.B. that would have avoided the need for considering involuntary examination and the trauma involuntary examination could cause. Defendant's only argument that Dr. Kosmerl lacked sufficient training to opine on *those* topics is based entirely on an erroneous statement of her previous experience that Dr. Kosmerl corrected on the record (a point omitted by Defendant).

For these reasons, Plaintiffs ask that the Court deny Defendant's *Daubert* Motion [ECF No. 172, ("Mot.")] in full.

## II.   ARGUMENT

### A.  Dr. Kosmerl is Qualified to Offer Opinions on W.B.

Defendant contends that Dr. Kosmerl is not qualified to opine on W.B. because she did not provide him with therapy and her "only familiarity with W.B." was from his records. [Mot. at 3–4.] This argument ignores both the relevant law and the true extent of Dr. Kosmerl's extensive preparations. Indeed, unlike Defendant's expert Dr. Ruiz—who relied solely on medical reports and police records and did not review other sources of information he would normally consult such

2

as deposition and interview transcripts—Dr. Kosmerl comprehensively reviewed W.B.'s records, case materials, and certain deposition transcripts. That sufficiently qualified her to opine on W.B.

To be qualified to offer an opinion under Federal Rule of Evidence 702, an expert must have "sufficient 'knowledge, skill, expertise, training, or education,' to form a reliable opinion about an issue that is before the court." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1286 (N.D. Fla. 2017) (quoting *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010)). These qualifications may arise from training, education, or experience in a field. *Ruiz v. Safeco Ins. Co. of Ill.*, 2019 WL 2061093, at *3 (S.D. Fla. May 9, 2019). Importantly, a proffered expert is not required to conduct an in-person evaluation so long as she has reviewed accepted sources of information typically reviewed by an expert within the same field that provide sufficient background. *See Geyer v. NCL (Bahamas) Ltd.,* 203 F. Supp. 3d 1212 (S.D. Fla. 2016) (finding the medical expert's testimony admissible because it was based on 26 years of expertise and his review of the plaintiff's medical records, despite not examining the plaintiff).

Dr. Kosmerl comfortably satisfies this requirement. Much like the expert in *Geyer*, Dr. Kosmerl formed her opinions based upon years of experience regarding accommodations for students like W.B. and a thorough evaluation of W.B.'s records, case materials, educational records, plus deposition transcripts of four witnesses. [Kosmerl Rpt. At 70–72]. This review further included psychiatric records, policy documents, investigation reports, and over 35 other works. [Kosmerl Rpt. at 74–76]. Under these circumstances, the fact that Dr. Kosmerl did not also conduct an in-person evaluation "is an issue more appropriately addressed on cross-examination." *C.S. by Spataro v. Sch. Bd. of Seminole Cnty.*, 2009 WL 10706170, at *6 (M.D. Fla. May 15, 2009); *see also*, *e.g.*, *Covas v. Coleman Co., Inc.*, 2005 WL 6166740 at *6 (S.D. Fla. July 27, 2005) (failure

3

to physically examine equipment at issue was subject to cross-examination). Defendant's contrary view, [Mot. at 4], simply ignores the relevant law.

Defendant next contends that Dr. Kosmerl lacks any individualized knowledge to support her opinions on "what school district policies 'should' do." [Mot. at 4]. But Defendant both fails to provide *any* citations to Dr. Kosmerl's Report to support this false claim and wholly ignores her relevant education, training, certification history, and over 12 years of public education experience in Pennsylvania and Florida, most notably as Supervisor of Special Education for an entire school district. [Kosmerl Rpt. at 2, 37–49]. Even more saliently, Dr. Kosmerl testified during her deposition that her opinions on school district policies were based on her extensive experience as a special education consultant and specific training in special education law:

> Q: You say you have in-depth training over 16 years in special education law and compliance, federal and state. Can you elaborate on that?
> A: When I was a special education consultant, they trained us in the special education law related to -- especially because I was sitting in as the LEA [Local Educational Agency] and approving the IEPs -- like what exactly was going into when you sit in as an LEA and what does it mean, and our attorneys would update us on any case law that would come out.

[Kosmerl Dep., ECF No. 172-2 at 39:9–18]. Moreover, in her role as Supervisor of Special Education, Dr. Kosmerl "[o]versaw the implementation of legal processes and compliance of teachers and administrators, including paperwork and instructional practices," and "[d]eveloped and delivered EBP training for teachers, administrators, and para-educators on topics related to special education, FBAs, BIPs, LRE, and special education law." [Kosmerl Rpt. at 42]. She was therefore well-qualified to opine on the propriety of certain school district policies.

Defendant also argues that Dr. Kosmerl's testimony does not assist the jury because she "parrot[ed]" another expert's report. [Mot. at 4–5]. Dr. Kosmerl, however, did not rely on the opinions of any other experts in the case. And while she did rely in part on prior diagnostic

evaluations of W.B., she permissibly applied the findings of those evaluations, which Defendant does not dispute, to new questions: whether the accommodations listed in W.B.'s educational records were provided, and what other accommodations should have been provided. Defendant's position that this constitutes impermissible "parroting" would preclude a physician from relying on a patient's past medical records to opine on what medical treatment that patient did or should have received. Yet, as noted above, courts routinely permit just that.

Defendant cites two authorities, but neither supports its argument. The expert in *Grayson v. No Labels Inc.* relied on another expert's findings but—unlike Dr. Kosmerl—"fail[ed] to discuss how [the other expert] arrived at his conclusions before attaching his stamp of approval." 599 F.Supp.3d 1184, 1193 (M.D. Fla. 2022). Here, in contrast, Defendant does not contend that there is any uncertainty about how W.B.'s prior evaluations were conducted. *McHale v. Crown Equip. Corp.* held that one expert *properly* relied on another expert's findings because the first expert, like Dr. Kosmerl here, did *not parrot* the other expert but instead reached his own independent conclusions. 2021 WL 289346, at *3 (M.D. Fla. Jan. 28, 2021), *aff'd*, 2022 WL 4350702 (11th Cir. Sept. 20, 2022). Far from "act[ing] as a 'ventriloquist's dummy,'" *Grayson*, 599 F. Supp. 3d at 1193, Dr. Kosmerl permissibly relied on a long list of her own materials to independently reach the conclusions in her report. Tellingly, Defendant cites no portion of her report demonstrating blind reliance on others.

### B. Dr. Kosmerl is Qualified to Offer Opinions on Florida's Mental Health Act and Implementation Related to W.B.

Defendant contends that Dr. Kosmerl "lacks the requisite expertise in the Baker Act itself, an understanding of the applicable School Board policy, and has not [sic] expertise in the area of suicide or homicide." [Mot. at 7]. But its motion rests on a misunderstanding of what her report actually addresses: Dr. Kosmerl did not opine on whether W.B. was a danger to himself or others

5

at the time he was involuntarily examined; rather, she opined on whether the District utilized accommodations that could have obviated any potential need for involuntary examination, including those that were obvious and/or known to District staff. [Kosmerl Rpt. at 4]. Dr. Kosmerl is qualified to opine on the topics her report actually addresses. As noted above, she has extensive experience in accommodations for students with disabilities like W.B.'s, including in "evaluat[ing] clients when they exhibit severe physical aggression, which is causing imminent harm, suicidal/ homicidal ideations, or attempts using C-SSRS and SAD Persons." [Kosmerl Rpt. at 41].

Defendant argues that Dr. Kosmerl inaccurately summarized the 2021 Mental Health statute in her Rebuttal Report, [Mot. at 5], but fails to state *where* her report purportedly did so. Instead, Defendant focuses on Dr. Kosmerl's deposition testimony, faulting her for supposedly failing to reference the following language from the Baker Act criteria: "substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or others in the near future." [Mot. at 5]. Again, though, because Dr. Kosmerl was *not* opining on whether W.B.'s circumstances met the statutory criteria for the Baker Act, it is wholly unsurprising she did not reference that statutory language. Indeed, Defendant offers no explanation why this statutory language was necessary to any of the opinions Dr. Kosmerl actually offered.

Defendant also contends that Dr. Kosmerl "cherry-picked" facts because she does not discuss that "W.B. was reported by his mother [L.H.] to have been looking up ways to kill people on the internet." [Mot. at 7].[3] As was appropriate to the opinions she offered, however, Dr. Kosmerl

---

[3] That is a disputed fact. L.H. testified that W.B. did *not* look those things up:

> Q: Do you have any reason to believe, or disbelieve, that W[.B.] had said he wanted to kill somebody?
> A: No. I don't believe he said he wanted to kill anyone. I have never even hear him use those phases [sic] at home.
> […]

6

relied on only those facts that were available to the decision makers before W.B. was handcuffed and involuntarily detained—which did not include these alleged statements from L.H. Regardless, Dr. Kosmerl explained at her deposition that these disputed statements did not create imminent danger, as W.B. was not acting on them. [Kosmerl Dep. at 65:5–11]. This explanation confirms Dr. Kosmerl's analysis was well-reasoned and considered, not based on cherry-picked facts.[4]

### C.  Dr. Kosmerl is Qualified to Offer Opinions on Professional Crisis Management.

Defendant further challenges Dr. Kosmerl's opinions on Professional Crisis Management ("PCM"), falsely claiming that "she has no experience or certification in PCM," which is one of the crisis management systems used by the District. [Mot. at 8–10]. In fact, Dr. Kosmerl *has* been trained in PCM, and she also *is* certified in crisis management as a Safety Care trainer and has even used this certification as a special education administrator and in her clinic [Kosmerl Dep. at 44:9–13; 45:11–13]. As a certified Safety Care trainer, Dr. Kosmerl has been required to renew her certification annually [Kosmerl Dep. at 44:14–19]. Although she misspoke during her

---

Q: If in fact that did happen, would you agree that W[.B.] would need treatment to address the issue?
[…]
A: No.
[…]
A: Because he never said that, or looked anything up about killing himself or other people.

[Ex. 1, L.H. Deposition at 14:15–19; 69:22–23, 25; 70:4–6]. Dr. Kosmerl was not required to rely upon Defendant's view of this disputed fact. *See, e.g., TRA Farms, Inc. v. Syngenta Seeds, Inc.*, 2014 WL 1478846, at *2 (N.D. Fla., Apr. 15, 2014) ("to the extent Dr. Diaz-Perez's opinion relies upon any such disputed fact, his opinion will be subject to cross-examination"); *Baan v. Columbia County*, 180 So.3d 1127, 1132 (Fla. Dist. Ct. App. 2015) ("In forming opinions, an expert is entitled to rely on any view of disputed facts the evidence will support.").

[4] Defendant also notes that Dr. Kosmerl previously provided treatment to another Plaintiff about whom she does not opine in this case. [Mot. at 4]. As Defendant also observes, however, Dr. Kosmerl stopped treating that patient because insurance was not covering her treatment and he needed a higher level of care. [Mot. at 4]. Defendant offers no explanation for why these facts disqualify Dr. Kosmerl from testifying about a different child. The fact that she was not able to provide some treatment to one child does not affect her ability to opine about another.

7

deposition and stated that she was last re-certified in 2001, that testimony was corrected in an errata sheet indicating she was actually re-certified in *2021*. [Ex. 2, Kosmerl Errata Sheet]. Defendant was informed this testimony was mistaken. It received the errata sheet by email and even confirmed receipt. [Ex. 3, 3/7/2023 email to the District and reply indicating receipt].

While Defendant faults Dr. Kosmerl for not being more knowledgeable about a *different* crisis management system used by the District (VITAL), Rule 702 does not require an expert to be personally familiar with everything on which they opine. *See Exum v. Gen. Elec. Co.*, 819 F.2d 1158, 1163 (D.C. Cir. 1987) (Rule 702 "does not require the expert to have personal familiarity with the subject of his testimony"); *Whiteside v. Infinity Cas. Ins. Co.*, 2008 WL 3456508 (M.D. Ga. Aug. 8, 2008) (expert is not required to have personal knowledge of the facts of the case, but must be qualified regarding the matters he intends to offer an opinion on); *United States v. Wen Chyu Liu*, 716 F.3d 159, 169 n.26 (5th Cir. 2013) ("a lack of direct experience is not a sufficient basis to reject [an expert's] testimony, but may affect the weight that testimony is given") (quoting *Martin v. Fleissner Gmbh*, 741 F.2d 61, 64 (4th Cir.1984)). Moreover, there is no reason for Dr. Kosmerl to have been trained in VITAL. It is simply a set of restraint techniques developed by District police officers [Ex. 4, Nissensohn Dep., at 17:20-18:5; 97:17–98:1]. It is not a de-escalation system. [Ex. 4, Nissensohn Dep. at 98:19–99:16]. Given that VITAL was developed in-house by District personnel, Defendant's insistence that an expert be VITAL-trained amounts to a position that no outside expert can ever opine on de-escalation in District schools.

Here, Dr. Kosmerl's opinion was based on her experience and training in general crisis management techniques—plus one of the specific crisis management systems used by the District. *See Wen Chyu Liu*, 716 F.3d at 169 ("Because of [expert's] training and experience as a chemical engineer and his broad experience in chemical plants including polymer plants, . . . the district

8

court abused its discretion in excluding his opinion testimony related to the manufacturing of [product at issue]."); *Green v. Five Star Mfg., Inc.*, 2016 WL 1243757 (N.D. Ala. Mar. 30, 2016) (finding expert's "experience assessing vehicle product designs for consumer safety and implementing protections against design hazards qualifies him to offer testimony regarding the design of a relatively simple product intended to be used in connection with a vehicle from a consumer safety perspective"). That is especially so because, in addition to undergoing PCM training, Dr. Kosmerl conducted research into the PCM and VITAL systems prior to offering her opinions. [Kosmerl Dep. At 48:12–14 (research of VITAL and review of Officer Brown's deposition transcript); 45:11–47:6 (PCM training and review of the PCM materials used in preparing her report)]. Given Dr. Kosmerl's deep experience with crisis management and her preparation in familiarizing herself with the relevant systems, she is qualified to provide opinions on PCM.

### D.  Dr. Kosmerl is Qualified to Offer Opinions on Trauma-Inducing Behaviors.

Defendant finally argues that Dr. Kosmerl should be precluded from offering two opinions regarding trauma. [Mot. at 10–11]. Neither argument is availing.

Defendant first focuses myopically on Dr. Kosmerl's status as a "Certified Trauma and Resilience Practitioner," [*see* Mot. at 10], in arguing that she was not qualified to opine that "all school personnel should be trained in the signs of childhood trauma," [*see* Kosmerl Rpt. at 20]. Not only is Dr. Kosmerl also a Board Certified Behavior Analyst- Doctorate (BCBA-D)—and as such has previously testified in the fields of behavior, trauma, and education and developed EBP treatment plans using trauma-informed ABA—but she has over 12 years of public education experience, as well. [Kosmerl Rpt. at 3–4, 37–41]. This extensive training and experience, in turn,

9

informed Dr. Kosmerl's opinion. [Kosmerl Rpt. at 3]. As a result, Dr. Kosmerl was appropriately qualified to proffer this opinion. *See*, *e.g.*, *Navelski*, 244 F. Supp. 3d at 1286.

Defendant next asserts that, because "Dr. Kosmerl did not evaluate or diagnose W.B.," she cannot "state whether W.B. or [other students] were evincing trauma-related behaviors." [Mot. at 10–11]. But Dr. Kosmerl was not purporting to *diagnose* W.B.; rather, she identified, based on cited medical literature, what "could be signs of trauma" and stated that W.B. had repeatedly exhibited "[s]ome of these signs of trauma." [Kosmerl Rpt. at 20]. That opinion appropriately reflected her substantial familiarity with the common signs of trauma, based on her extensive training and experience as a Certified Trauma and Resilience Practitioner, as well as her familiarity with the extensive records, deposition testimony, and other information concerning W.B.'s case. *See*, *e.g.*, *Milbrath v. NCL (Bahamas) Ltd.*, 2018 WL 2291307, at *2–3 (S.D. Fla. May 18, 2018) (opinion as to whether plaintiff suffered post-incident neurocognitive impairment was reliable when based on "plaintiff's medical records, test results, and deposition testimony" and expert's "twenty years of experience as a board-certified neurologist"); *Price v. Carnival Cruise Lines*, 2022 WL 951318, at *4 (S.D. Fla. Mar. 30, 2022) (same for medical-causation opinion based on "extensive medical records, diagnostic reports, and fourteen [14] diagnostic studies" but no personal evaluation).

Defendant's reliance on *Hendrix* is misplaced. In that case, the challenged expert purported to offer a diagnosis of what had caused the plaintiff's traumatic brain injury, but had failed to adhere to the expert's own methodology. *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1194, 1198 (11th Cir. 2010). That case specifically distinguished the circumstances here, where the expert observes that "the medical community generally recognizes" the effects of the purported trauma. *Id.* at 1196. And unlike in *Hendrix*, Defendant has not questioned any of the medical literature or materials

10

that Dr. Kosmerl relied on in forming her opinion. Accordingly, Defendant offers no basis for this Court to conclude that Dr. Kosmerl's opinions are unreliable.

### III. CONCLUSION

As demonstrated above, Dr. Kosmerl is qualified to offer expert opinions. Plaintiffs therefore respectfully request that Defendant's Motion to Exclude Testimony of Kristin Kosmerl, Ed.D. be denied.

Dated: June 14, 2023

/s/ Sam Boyd
BACARDI JACKSON (Florida Bar No. 47728)
SAM BOYD (Florida Bar No. 1012141)
CARLI SEAN RABEN (Florida Bar No. 1036013)
Southern Poverty Law Center
P.O. Box 12463
Miami, FL 33101
Tel: 786-347-2056
Fax: 786-237-2949
bacardi.jackson@splcenter.org
sam.boyd@splcenter.org
carli.raben@splcenter.org

ANN MARIE CINTRON-SIEGEL (Florida Bar No. 166431)
MOLLY J. PARIS (Florida Bar No. 90486)
Disability Rights Florida, Inc.
1930 Harrison St. Ste. 104
Hollywood, FL 33020
Tel: 800-342-0823
Fax: 850-617-6647
anns@disabilityrightsflorida.org
mollyp@disabilityrightsflorida.org

SHAHAR PASCH (Florida Bar No. 580971)
Pasch Law Group
1806 Old Okeechobee Road, Suite B
West Palm Beach, FL 33409
Tel: 561-599-7400
Fax: 561-258-8243
shahar@paschlaw.com

MELISSA DUNCAN (Florida Bar No. 796921)
Legal Aid Society of Palm Beach County, Inc.
423 Fern St., Ste. 200
West Palm Beach, FL 33401-5839
Tel: 561-655-8944
Fax: 561-655-5269
mduncan@legalaidpbc.org

HANNAH BENTON EIDSATH (admitted *pro hac vice*)

NINA MONFREDO (admitted *pro hac vice*)
National Center for Youth Law
818 Connecticut Avenue NW, Ste. 425
Washington, D.C. 20006
Tel: 202-868-4791
Fax: 510-380-7603
hbenton@youthlaw.org
nmonfredo@youthlaw.org

JEAN STROUT (admitted *pro hac vice*)
RACHEL VELCOFF HULTS (admitted *pro hac vice*)
National Center for Youth Law
1212 Broadway, Ste. 600
Oakland, CA 94612
Tel: 510-835-8098
Fax: 510-835-8099
jstrout@youthlaw.org
rvelcoff@youthlaw.org

JOSHUA C. TOLL (admitted *pro hac vice*)
King & Spalding LLP
1700 Pennsylvania Ave. NW, Ste. 200
Washington, D.C. 20006
Tel: 202-737-8616
Fax: 202-626-3737
jtoll@kslaw.com